█ In the Matter of EDWARD H. SHARROW et al., Appellants, v STATE OF NEW YORK et al., Respondents. [628 NYS2d 878] —Peters, J. Appeal from a judgment of the Supreme Court (Cobb, J.), entered November 30, 1994 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Attorney-General finding that petitioners are not entitled to be provided with legal representation under Public Officers Law § 17 (2).

Petitioners are two correction officers employed by the Department of Correctional Services (hereinafter DOCS) and were assigned to Great Meadow Correctional Facility in Washington County. On September 20, 1993, there was an altercation instigated by inmate Jason McDade in the yard area which was quickly quelled by the correctional staff. Thereafter, McDade, with his hands cuffed behind his back, was escorted from the area by four correction officers. Once through the gate, McDade was beaten by petitioners. Petitioner Korey E. Gordon hit him on the head with his baton and petitioner Edward H. Sharrow hit him three times with his baton. It is uncontested that McDade did not resist any effort to bring him under control and that such assault was unprovoked. The entire altercation between petitioners and McDade was captured on videotape.

An arbitration hearing was later held which addressed the charges and penalties proposed against petitioners and the two other correction officers involved. Such hearing, in which petitioners did not contest the aforementioned facts, resulted in the discharge of petitioners and a suspension without pay for the two remaining officers. McDade thereafter commenced a Federal civil rights action (*see*, 42 USC § 1983) against all correction officers involved in the incident. Said action alleged that the correction officers were acting under color of State law

but did not allege that they were acting within the scope of their employment.

Upon request, respondent State of New York agreed to defend the two officers suspended without pay but denied representation to petitioners stating, by letters dated April 14, 1994, that the Attorney-General determined that the facts and circumstances herein fell outside the scope of Public Officers Law § 17. Petitioners commenced this CPLR article 78 proceeding to review the Attorney-General's determination which was upheld by Supreme Court.

Public Officers Law § 17 (2) (a) provides, in relevant part, as follows: "the state shall provide for the defense of the employee in any civil action or proceeding in any * * * federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties; or which is brought to enforce a provision of section * * * nineteen hundred eighty-three of title forty-two of the United States code and the act or omission underlying the action occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties." It has been found to impose a two-part test to determine whether a defense by the Attorney-General is authorized (*see*, *Mathis v State of New York*, 140 Misc 2d 333; *Matter of Spitz v Abrams*, 123 Misc 2d 446, *affd* 105 AD2d 904).*

"The Attorney-General's role is similar to that of an insurance company which must decide if a defense is owed under its policy" (*Mathis v State of New York*, *supra*, at 339; *see*, *Matter of Garcia v Abrams*, 98 AD2d 871). First, the allegations of the complaint must be reviewed to determine if it is alleged that the employee committed a wrongful act while acting within the scope of his employment (*see*, *Matter of Polak v City of Schenectady*, 181 AD2d 233, 236; *Mathis v State of New York*, *supra*, at 338; *see generally*, *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322). Our review of the complaint herein indicates that while the inmate alleges, *inter alia*, that petitioners were employed by DOCS, assigned to his correctional facility and were "acting under color of state law" at the time of the incident, Supreme Court correctly concluded that the Federal complaint did not definitively allege that petitioners

---

* After *Matter of Spitz v Abrams* (*supra*) was decided at the appellate level (Nov. 1, 1984), Public Officers Law § 17 (2) (a) was amended (L 1985, ch 768, § 1, eff Aug. 1, 1985), eliminating a third test in matters involving Federal civil rights actions (*see*, *Mathis v State of New York*, *supra*).

were acting "within the scope of [their] public employment or duties" (Public Officers Law § 17 [2] [a]).

Hence, as found by Supreme Court, the Attorney-General properly commenced the second phase of the inquiry which requires looking "behind the pleading to the facts underlying the occurrence" (*Mathis v State of New York, supra,* at 339). Unlike the situation in *Mathis v State of New York (supra),* which involved a factually conflicting account presented to the Attorney-General for determination, this case presents the unusual scenario of having the underlying facts "so clear-cut that reasonable minds could reach no other conclusion" (*supra,* at 339; *see, Servidone Constr. Corp. v Security Ins. Co.,* 64 NY2d 419, 424). Unlike *Cepeda v Coughlin* (128 AD2d 995, *lv denied* 70 NY2d 602), the undisputed evidence here establishes that there existed no justification for the force used since it occurred after the inmate disturbance had been quelled by the correctional staff and in a situation where there was no resistance by the inmate upon whom the force was used. Under such circumstances, where the petitioners' conduct was a substantial departure from the essential correctional goal of maintaining order, discipline and control (*see, Spitz v Coughlin,* 161 AD2d 1088), we find that the Attorney-General properly denied the defense (*see, Mathis v State of New York, supra*) since "as a matter of law * * * there is no possible factual or legal basis on which [the State] might eventually be held to be obligated to indemnify [petitioners]" under Public Officers Law § 17 (*Spoor-Lasher Co. v Aetna Cas. & Sur. Co.,* 39 NY2d 875, 876; *see, Servidone Constr. Corp. v Security Ins. Co.,* 64 NY2d 419, 424, *supra; see also, International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, *supra*).

Next, addressing the propriety of the Attorney-General's use of the arbitration determination in furtherance of its investigation of the underlying facts, we note that such determination is a confidential personnel document within the parameters of Civil Rights Law § 50-a (1). Yet, we find that Supreme Court correctly determined that Civil Rights Law § 50-a (4) specifically authorizes the Attorney-General to use such records in the instant circumstances.

Cardona, P. J., Mikoll, Mercure and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.